The University of Iowa went after Blink because of its leadership requirements because it did not have a membership requirement. Blink invited everyone, including the complainant in this case, to participate fully in their activities. And when the university met with Blink in September of 2017, the university told Blink that it actually didn't have any policy against leaders signing a statement of faith or some other statement of mission alignment, that that was perfectly permissible, that the university had always required it. The university told Blink in that meeting that it couldn't force them to select leaders who didn't share their faith any more than it could require an environmental group to select a climate denier to be their leader. And Blink and the university both left that meeting with the understanding that Blink would be allowed to continue requiring leaders to sign a statement of faith. But you never mentioned a case that addresses the leadership issue that applies viewpoint discrimination in the context of a university, a student group, and leadership? I'm sorry, your honor, the first part of your question cut out for me. Can I address the cases that address viewpoint discrimination? Well, and I'm wondering, do any of them address the specific facts of this case, which relates to student organizational leadership positions? Well, your honor, I would note that Martinez, the Supreme Court student organization case, strongly suggested that leadership could not be subject to restriction by the university. There, only four justices even insinuated that an all-comers policy, which is not an issue here, could apply to leaders. The court said that if anyone used an all-comers policy to try as a subterfuge to take over leadership, then it presumably would change its policy. Justice Kennedy, who was the fifth vote, explicitly stated that if that happened, that if an all-comers policy was used to challenge leadership or to challenge the group's views, that that would create a substantial case of viewpoint discrimination. And so, and then Hosanna Tabor came out two years later and clarified that especially for religious organizations, the religion clauses prohibit interference in leadership selection. Well, they call it ministerial in those cases, don't they? I'm sorry, your honor, could you repeat that question? Sure, happy to. Those cases all call it ministerial, right? Hosanna Tabor in Guadalupe? That's not correct, your honor. The cases often refer to the ministerial exception, but Judge Alito in Our Lady of Guadalupe and also Justice Kagan and Justice Alito in Hosanna Tabor warned against the use of the term ministerial, that it was a term of art that broadly encompassed religious leadership selection. And if you look at the Sixth Circuit decision in Conlon v. InterVarsity, that court held that Hosanna Tabor had identified that the establishment clause creates a structural barrier against the government interfering in a religious organization's internal affairs and that employment in Our Lady of Guadalupe, the court said that employment disputes were just one part of that. And so it doesn't matter whether someone's actually called a minister or not, if they perform a religious function, as blinks officers do here, they pray, they lead Bible study, they minister directly to their student members, there's no question that they perform a ministerial function and that their religious leadership selection is protected under the religion clauses. Of course, that goes even beyond the basic cases, the long line of Supreme Court cases and cases in this circuit holding that viewpoint neutrality is a sine qua non for universities managing student groups in a limited public forum. This case's decision in Gerlich in 2017 cited Martinez for the principle that courts cannot engage in viewpoint, or that universities cannot engage in viewpoint discrimination in handling student groups on campus. And that case was arguably a much more difficult case because there the benefit involved the use of the university's trademarks. It was much more easy to attribute the student group's speech to the university, but the court rejected that argument and said that viewpoint neutrality was still the straightforward ironclad obligation of the university. Defendants complained that Gerlich didn't involve a nondiscrimination policy, but there is a robust consensus of cases. In fact, a unanimous consensus of cases applying address the application of nondiscrimination policies in a limited public forum on university campuses. I point this court to the Seventh Circuit's decision in CLS versus Walker where the court without equivocation held that you cannot restrict, you cannot stop a religious group from having leadership requirements. Requirements very similar to those at issue here because of a nondiscrimination policy that viewpoint neutrality was still the governing principle. I point the court to Ward versus Polite, also applying nondiscrimination policy in a conduct and holding that it did not trump the First Amendment's protections. Let me interrupt you. The Ward case, of course, did not involve an organization, right? That's correct. So is it in of limited help? I think it still applies because the principle was that they could not engage in viewpoint discrimination or violate the individual's religious freedom. Now, the Reed case did involve a student organization. That's the case that defendants seemed to rely on most. And there, the court held exactly the opposite of what defendants said. The court did recognize that policy as written in that case was viewpoint neutral. But it remanded the case because it was concerned that there was evidence of discrimination in how the policy was applied. And the court was clear that that would be unconstitutional. The court remanded to give the university an opportunity to clean up its enforcement. Said maybe some of these incidences where there's selection based on protected categories or just oversight, the university just didn't know it, now can go back and clean it up. Well, and we don't know the case settled after that point. But the same thing has already happened in this case. The district court's first injunction was limited to 60 days. Specifically to give the university an opportunity to go down and clean up its enforcement. The university already rejected that opportunity. Instead, deregistered additional student groups while amending its policy to protect fraternities. Left numerous dozens of other groups untouched that already discriminated based on protected categories. And then when it showed up at the preliminary summary judgment hearing, the university presented a spreadsheet of all of its student groups. Highlighting all of the groups that it believed were in violation of its policy. And said they were on hold pending the litigation. All of those groups were, it was just religious groups on that list. 32 religious groups. All of the religious groups with leadership requirements except Love Works. The group with beliefs exactly opposing blinks. And no other groups, even though there are numerous groups. House of Lords that requires its leaders and members to identify as black individuals. The Socialist Democrats was one that the court identified which requires its leaders and members to affirm the beliefs of that organization. Numerous other examples that are set forth in the joint appendix. If the court looks there at 24, Joint Appendix 2449. Paragraphs beginning 14 through roughly 30. Identifying lists of organizations that discriminate on protected categories. And were never ever addressed by the university. Despite the many warnings from the district court over two preliminary injunctions. And these cases are consistent with a long line of cases from the Supreme Court. This court in Gerlich, Galib, and Gohn. All cases involving viewpoint neutrality with student organizations in a limited public forum. Now even without the viewpoint neutrality issue. I would remind the court that this case initially involved straight religious targeting. In violation of both the free association. A clearly established law of free association and free exercise. The Supreme Court's decisions in Hurley and Dale which are cited in our brief. Clearly held that a non-discrimination policy cannot be used to override a private organization's right to organize around shared beliefs and goals. And that was another important point that the district court missed on the reasonableness issue. Where she was asking if the university's enforcement of its policy was reasonable in light of the purposes of the forum. The court pretty much summarily held that it was reasonable even after the university amended its policy. She didn't reconsider the issue. But it doesn't make sense. The policy if you look at again JA 2449 paragraphs 4 and 5. The admitted purpose of the forum was to allow like-minded students to gather around shared goals and beliefs. It can't be reasonable if that's the purpose of the forum. Which is very different than the purpose of the forum in Martinez. If the purpose is shared beliefs and goals allowing like-minded students together. It's not reasonable then to refuse to allow some groups to select their members based on those goals and values. So we would say that even without the viewpoint discrimination. Defendants are not entitled to qualified immunity because they violate the clearly established law of free association. And the same is true with the free exercise of religion. Remember when this case started. As I mentioned earlier the university told Blink that its leadership selection was okay. It's admitted that it has always allowed leadership selection including other religious groups with the same beliefs as Blink. To maintain statements of faith required leaders and members to sign those. Defendants Baker and Nelson signed a memo reaffirming that that was permissible. And that student government leaders would be personally liable. If they tried to cut off funding to groups because of their statements of faith. It was only at that meeting the conclusion was that the university invited Blink to add a statement of faith. So that students would know what the group was about before they joined it. Blink agreed to do that and provided a one page statement of faith. And it was three sentences in that statement that then triggered the deregistration statements about Blink's views on marriage and sexuality. And defendants admitted that if Blink would have just deleted those three statements from its statement of faith. That they would have allowed it to remain on campus even with its other religious standards for leaders. Defendant Baker admitted that he thought it was fine to have standards about sexual conduct for leaders and members. But he said it depended on what those standards were. If they acknowledged same sex marriage it was okay. If they didn't it wasn't okay. That's a clear example of religious targeting. Yes your honor. Let me ask you. As I understand your argument. What you're saying is there may not be a case factually identical with this in prior precedent. But I understand you to be saying there's a substantial body of case law that would create notice to reasonable university personnel. That what they were contemplating and what they were doing was violative of first amendment principles. Is that your argument? Maybe I gave a misimpression your honor. I think there are cases directly on point. Okay then what's your case and cases that are directly on point showing these defendants that they were violating clearly established constitutional law. The 7th circuit decision in Christian Legal Society versus Martinez is exactly on point. I would argue that Martinez and the 9th circuit decision in Reed are also exactly on point with respect to enforcement of a policy. Enforcement of a policy that is not an all comers policy. Both of those courts held applying a non-discrimination policy to student orgs on campus that you cannot engage in viewpoint discrimination. All three of those cases are directly on point. I would also point this court to its own decision in Cuffley versus Mickey's which is at 208 F3rd 702 where this court held that application of a non-discrimination policy could not be used to exclude the KKK from participating in what could have been considered a limited public forum. The court said it actually didn't matter if it was a limited public forum or not because the viewpoint discrimination was impermissible in any context. But here we're not even talking about something that extreme. We're talking about a religious group on campus trying to live out its beliefs. Beliefs that the Supreme Court in Obergefell has recognized as decent and honorable beliefs shared by a large number of Americans. I would also point this court to its decision in Wagner versus Jones at 664 F3rd 259 where the University of Iowa, again, was denied qualified immunity for rejecting a law school faculty applicant because of her socially conservative views. And this court held that it should have been obvious to the dean of the law school that that was an impermissible basis for terminating someone. I think that's analogous to the situation where groups like Love Works were allowed to remain on campus, engage fully in the benefits that the university offered even though they required their leaders to sign a gay affirming statement of faith. Blink, on the other hand, was deregistered for requiring its officers to sign a statement of faith that they only put into their constitution because the university asked them to. It's textbook viewpoint discrimination. Mr. Baxter, you're well within your rebuttal time. You can continue if you like or you can reserve. Looks like you have a little under three minutes remaining. Thank you, Your Honor. I'll reserve my time. The clock disappeared off my screen and so I wasn't aware. Thank you. May I proceed, Your Honor? I'm sorry, I was muted. Yes, you may please proceed. Thank you, Your Honor, and may it please the court. Let me begin by thanking the court and court staff for making this possible. This isn't easy and I think the litigants all appreciate the effort the court and staff is putting in to make this happen. Simply put, this is a qualified immunity case. And more simply put, this is a pronged-to case. And so I'm not going to belabor what the court is aware of, that the U.S. Supreme Court in White v. Pauli and Wesley and other cases has been very, very specific about the need to look at particularized facts and with a high degree of specificity. In this matter, we concede, we will agree that a government entity should generally refrain from engaging in viewpoint discrimination is well settled law. And I think... Counsel, counsel, counsel, let me interrupt you. It's more than that, it's a presumption, right? That it's unconstitutional? The Supreme Court uses the term presumption and presumed? Correct. Well, that's... I think that's stronger than you stated it, right? Yes. Okay, proceed. Presumptively unconstitutional if you can prove viewpoint discrimination, Your Honor. Thank you for the clarification. But that a public university should decline to enforce the terms of a non-discrimination policy against a publicly funded student organization when faced with resolving a specific civil rights complaint by a student alleging that he has been excluded from participation as a leader in that organization is not well settled. Again, Blake urges the court to look through the lens of simple viewpoint discrimination cases which is the Gerlich case. But it is not similar in any way on the facts other than the fact that it occurs in the context of a university. You know, we... Counsel, question. I'm wondering what the significance, if any, is of the district court's statement here that the individual defendant should have been aware that their actions implicated Blake's First Amendment rights and indeed the record shows that they were. Generally, I don't think qualified immunity protects those who knowingly and intentionally violate constitutional rights. So I'm wondering what your views are on the district court's finding on that issue. Well, I mean, I also think I think First Amendment rights is such a broad brush to sweep with here that, in other words, I think there's no doubt from the record that the university officials were aware that First Amendment rights were implicated by the limited public forum created by their registration of student organizations. And again, that's well settled as well. The more specific question here, though, is whether the specific conduct alleged in the complaint in fact violated the First Amendment. And I think that, for example, Mr. Baxter and the court referred in part to records that dealt with memos that go back into the 90s and the early 2000s. One of the things that's missing in that recitation of the facts is that again, this is why facts matter is that this is a non-discrimination policy in the state of Iowa that deals resolving a gay student's complaint about sexual orientation discrimination. The law in Iowa the civil rights law in Iowa was amended in 2007 the Varnum decision about marriage came down in 2009 and so the relationship between the human rights policy issue and the First Amendment issues was evolving, was changing and that's why it's important here not just to look at limited public forum jurisdiction but to look at it in the context of human rights policies and specifically in the context of university officials trying to decide and make a decision about how to respond to a specific allegation of discrimination I mean I don't think it's a legal conclusion about whether or not it was well settled. I don't think Judge Rose's comment about his binding with regard to this specific knowledge but the other thing that's important is this court applies a reasonable administrator standard. I mean this is a reasonableness objective standard and the discussion about prior memos based on different facts I think is somewhat of a red herring because you know as Judge Benton mentioned I mean this wasn't just about membership it was about leadership and much of what- Counsel, let me interrupt you. Doesn't that make it worse? You may know that there are religious organizations that don't believe you should have clergy don't believe you should have leaders who are ordained they believe the leader should be elected or just rise up or be ad hoc and when you're talking about who can lead a religious organization aren't you head on into about four or five of the parts of the first amendment? Well I mean again they're implicated but this case if you look at the file look at the petition when it was filed it was filed as a case that was clearly set up to argue to extend the Hosanna Tabor case which as you talked about is a ministerial exception in the context of a religious organization to a university and Mr. Baxter will not be able to point to any case anywhere where that has been done What about Martinez? He points to Martinez. Well that's not what it rejects that and the other thing that Martinez does is again I think Martinez clearly clarifies the standard for limited public forum analysis it basically merges the first amendment and the expressive association standard into one but what it does kind of on a stipulated record it opines about frankly a non-existent policy it was a stipulated all the whole court spends a lot of pages talking about whether it in fact existed or not but I think that it clarified that that type of policy would not be discriminatory but this is not what we have here I agree with Mr. Baxter that the policy is closer to reading but because it's not an all comers policy everybody's agreed to that but in Martinez I think one of the really important things that happened there that's getting lost in this shuffle is in the Walker case there was an argument made which is the very same argument that you see throughout the briefing in this case which is that Blank was not discriminating against sexual orientation in violation of the policy they were just saying you have to affirm or make a statement about conduct in fact Judge Rose talks about an admission where the state said you could be gay as long as you adopt this statement of beliefs one thing that Martinez absolutely did is absolutely rejected that structure Justice Ginsberg wrote that this conduct versus status distinction in the context of sexual orientation is not true and an attack on that conduct so central to the sexual orientation is an attack on the person and so I mean that's one of the reasons why Martinez and Reed and Walker don't clarify this I mean that's what these officials are grappling with is this context for the first time of any case where you see a frank conflict if you will between not just the existence of a policy and a refusal to register an organization which is what you saw in Martinez and Reed but a frank complaint about a violation of a human rights policy and there's that out there and that's what these administrators were grappling with the other thing to be frank and again I think Mr. Baxter has been clear about it the administrators were grappling in the midst of this with trying to comply with an injunction that was actually issued in the case right in other words we have conduct that occurred that led to the lawsuit the complaint and then in the context of that there's an early injunction and a lot of the conduct complained about here is administrators trying to figure out what to do how to comply with the injunction I mean so ultimately Judge Rose concludes that the conduct violated the constitution we have not appealed that your honor but she also correctly concluded that this whole area specific to universities in the context of human rights policies is not sufficiently clear to warrant the denial of qualified immunity Judge Rose was I think very specific as she went through the analysis and I think one of the things that really distinguishes this case from Gerlich is Judge Grichner in Gerlich denied qualified immunity here's how I see the law we've argued with that we appealed that we had a hard fought case at the circuit court level but in this case a federal judge Judge Rose explains why it is that she on the bench doesn't think that this is a clear question she talks about the particularized facts of the case the nature of the policy the university setting she actually doesn't mention the specific issue that there was an actual complaint pending and they were acting on a student complaint of discrimination which distinguishes it from any of the prior cases she says that she acknowledges that Martinez Reed and Walker are the most factually similar but she then says they don't give me clear conclusions on this in fact they give us no conclusion at all on the free exercise provision that is part of this case and that I district court judge in order to reach my conclusion on the merits has had to fill in the gaps using higher levels of law. Let me again ask you, you know about this Rose and this circuit the Trinity Lutheran case and the Supreme Court uses words like unremarkable and established in similar words to say a policy that discriminates against otherwise eligible recipients by disqualifying them from any public benefit solely because of their religious character violates the free exercise clause. Judge Rose did not discuss that right? That's true. What light do you think that throws in this case? Well I mean I think that you know I don't accept the premise that that is absolutely on point because I think that should she have discussed it yes your honor I agree but solely because it's the limiting factor here right? This isn't just pure you know we're not going to register like some of these other older cases because we don't like what you say. This gets triggered by a complaint by a student just like... About a religious issue counsel about a religious group. Well exactly but let me go back to what I was saying before about the construct here in other words Blank continues to argue and has throughout that this is about conduct in other words they have certain conduct that they expect members and leaders to abide by and that's what we're focused on not the status not the sexual orientation I've already said that I think the Supreme Court has rejected that construct but the flip side of that your honor and this is really to your question is that the University of Iowa has taken the position that they are not trying to regulate or deny this because of speech and you see the different quotes in the fact record cited by the court that are dismissed but that say our focus is on what we think is status discrimination based on sexual orientation and not the beliefs and that that's the trigger and so I mean I think and I mean I appreciate I mean it's I understand it's two sides of the same coin but it's something that really if you read the record that even the recitation of the record by Judge Rose it's something that the administrators were struggling with and it's something that is not resolved by any of these cases other than Martinez which on another set of facts says that is not you can't they don't get to exclude somebody who's gay because they won't embrace beliefs that basically cut to the heart of being gay and Justice Ginsburg wrote that and rejected the same argument that was made in the Walker case by the plaintiff. Mr. Thompson, this is Judge Smith. Do you see any difference in the clarity of the law with respect to free exercise versus free speech? Yeah, I mean I'll concede that I think it's a little tighter fit. In other words when you look at you can again look at Judge Rose's decision and kind of get a guide in the briefing in this case that at least when we move from Rosenberger to Martinez and Walker and Reed in the free speech cases we're in the context of universities. We're in the context of dealing with the RSOs. You know the free exercise cases, Smith and Walker are not in the same ballpark. I mean again it becomes a much broader statement general statement. I mean I think Smith was a workers comp case that dealt with employment and the Lucumi case was an animal slaughter statute and so I mean I think one of the things that Martinez expressly dealt with was the fact that dealing with institutions of higher learning and that framework it is essential to take into account the unique nature of a university and it's goals and it's focuses and it's purpose. Does that answer your question your honor? Yes. It's my sense that there probably is. I don't think the two can be lumped together in terms of the clarity of the law and it's applicability to particularly higher education institutions. Yes. So I mean I do think it's a closer call because we have this series of cases that have been litigated in one area but not the other. I mean with regard to the qualified immunity issue. I mean again it's noteworthy I believe that you know we sit here today after a very hard fought battle in the court below and in having appealed only the qualified immunity issue in part because the complexities are you know impose a cost for everybody and but I think that if you read the record again even as recited by Judge Rose I don't necessarily adopt all of her conclusions but what you see is administrators over time really wrestling with a difficult issue and really not finding clarity as to exactly how to deal with it. And I think that that's the purpose of qualified immunity. It serves an important public service and public purpose and I would urge this court to follow Judge Rose's conclusion that this is difficult stuff. It's not clear and that if you apply the U.S. Supreme Court standards that relate to qualified immunity the fact that she found liability if you will for the constitutional violation she found a violation that that does not lead under the court's clear jurisprudence to a conclusion that the individual defendant should be liable for damages. And with that I'll be happy to answer any further questions. One more. Qualified immunity is quite a difficult doctrine to apply to specific facts and the Supreme Court has given us a number of recent cases but most of those cases have been in the law enforcement context and involve what seems like a more strict application of it with respect to quick decisions of people in times of exigency. But development of an operative policy for a higher education institution being done with benefit of families and the like seem to be a different kind of circumstance than a number of the qualified immunity cases. Do you think that makes a difference in how the court should analyze qualified immunity? Well I think it changes. Again I think I've said up front that it's definitely an objective standard. You know a reasonable police officer you know in a stakeout or a shootout versus a reasonable university official or administrator. So I mean I will concede that the exigencies of facts that matter are different. But having said that I mean just like Mr. Baxter has said vehemently and will say it again how important the rights that he's here to vindicate are. I mean dealing with those rights therefore is very important as well. And subjecting public servants to personal liability when they don't get it right that that policy remains intact. And so I do think that's why the fact specific requirement of the Supreme Court jurisprudence that we've been talking about is so important. I mean why Pauli says look at particularized facts. So looking to cases that deal with decisions and actions by university administrators is important to deciding whether or not the law was generally established, well established. Thank you Mr. Thompson. Thank you your honor. Mr. Baxter your rebuttal and as you begin I'd like for you to address the same question I asked opposing council about there being any difference between the state of and clarity of the law with respect to free exercise and free speech. Unmute your mic please. Thank you your honor. The free exercise law is exceedingly clear on this issue as far back as 1970s and McDaniel versus Patey through the Trinity Lutheran decision in 27. The Supreme Court has determined that targeting religious beliefs as such is impermissible and that's exactly what happened here. You have two organizations one that accepts any students as long as they have a gay affirming view of Christianity. That's Love Works. Another group Blink that accepts any student regardless of sexual orientation or other status as long as they share Blink's religious beliefs. Blink was told it could not do that and was deregistered. Love Works was told it could do that even though it was basically saying it could reject students based on their religion. That is straight viewpoint and religious discrimination and the Supreme Court cases on religious discrimination are clear on this issue and so is this court, I would point again this court to the Wagner versus Jones case where the teacher was discriminated against because of her religious social conservative views. I would add that the free speech law is also exceedingly clear. I mentioned the CLS versus Walker from the 7th circuit that's 453 F3rd 853 where the court unequivocally held that you could not engage in viewpoint discrimination just because you have a non-discrimination policy. I would also point to the InterVarsity versus Wayne State case in the Eastern District of Michigan which was the subject of our October 28 J letter. Defendants would say well just because someone complained we had to do something. I would point the court to Good News Club versus Milford Central School 533 U.S. 98 where the court can't rely on, the government can't rely on complainants as it's only enforcement mechanism that gives power to the majority to silence their opposition or people who have a minority view and it's impermissible. Defendants claim that there's a confusion about balancing rights. They've identified no real conflict here. They could protect both students who identify as LGBTQ and religious students by allowing both to exist on equal terms on campus. That's the entire point of viewpoint discrimination that even when there are complicated, complex and controversial views that all government officials have an ironclad obligation to maintain viewpoint neutrality. This is not a close question and we would ask this court to reverse the district court for holding that it was and hold these defendants liable for deliberately violating clearly established law. Thanks Mr. Baxter. Thank you also Mr. Thompson. Court appreciates both of you participating in our oral argument in our virtual forum. It's been very helpful to us in working through the issues in this case and we'll take the case under advisement and render a decision as promptly as possible. Thank you both. Thank you your honor.